EDDIE HIRSCHBERG v. THE STATE.

No. 13166. Delivered March 12, 1930.
On State's Rehearing October 15, 1930.
Appellant's Rehearing Denied February 18, 1931.

The opinion states the case.

*C. E. Smith,* of Houston, for appellant.

*O'Brien Stevens,* Crim. Dist. Atty., of Houston, and *A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Offense, robbery by assault; penalty, thirty-five years in the penitentiary.

The payroll of the Hewitt Construction Company amounting to about $7,000.00 was forcibly taken from one of its employees as he approached the Lamar hotel building, where construction work by his company was going on. The employee was knocked down by a blow on the back of the neck and the money taken from him. The identity of the accused as the perpetrator of this crime was a closely contested issue on the trial. Appellant's defense was an alibi. Among those who positively identified appellant as having committed the robbery was one LaBleu, who at the time was working for the Hewitt Construction Company and whose testimony will be discussed below.

Several ponderous bills of exception appear in the record. Some of these contain a greater portion of the evidence produced at the trial and much irrelevant matter which tends to obscure rather than clarify the point attempted to be presented. One of them presents as error the action of the trial court in refusing to permit the appellant to impeach the State's witness LaBleu, whose testimony was reproduced at the trial, he having died since testifying at a former trial of this case. The State objected to the impeaching testimony because it was hearsay and no proper predicate had been proved for its admission. LaBleu gave cogent testimony as to appellant's identity. He claimed to have been within a few feet of where the robbery took place. A predicate was laid for his impeachment at a former trial, which was reproduced by appellant as part of the same testimony given by him and offered by the State. He answered then that he did not know John Bowers, did not talk to him within two or three minutes after the robbery and did not tell him that the man who committed it was a tall man in a blue suit of clothes with a dark hat on. Appellant offered Bowers, a newspaper man, as a witness, who would have testified, if he had been permitted to do so, that LaBleu had in fact told him the facts denied by him as above set out and that such conversation occurred at the scene of the crime a few minutes after it happened. Appellant was shown to be a very small man (about five feet tall) and the State's testimony tended to show he wore a white hat and blue suit at the scene of the crime. Other bills appear to present a kindred question and one of them apparently attempts to present also the point of the Court's refusal to permit impeachment of LaBleu by proof of his bad reputation for truth and veracity. In view of the disposition we make of this case, we will discuss generally what we understand to be the rule governing a matter of this kind, leaving the trial court to make such application of it as the facts warrant on another trial.

Bill No. 4, first mentioned above, is regarded under the facts of this case as showing proof of proper predicate for the impeachment of the witness LaBleu. In view of the issue of appellant's identity, there would seem to be no doubt that the offered testimony of Bowers tended

to weaken the effect of LaBleu's testimony. We think the existence of the rule will be conceded which permits impeachment of a deceased witness by proof of statements inconsistent with those of his produced by the State where a proper predicate has been laid for their admission. It has been many times held that a deceased witness may be so impeached without such predicate where there was no opportunity for proof of same, as in dying declarations. Lyles v. State, 64 Texas Crim. Rep., 621, 142 S. W., 592; Branch's P. C., Sec. 1868. Or where the witness made the alleged inconsistent statements subsequent to testimony given on examining trial and reproduced by the State. Hamblin v. State, 34 Texas Crim. Rep., 368, 30 S. W., 1075. See especially notes to Liddell v. State of Oklahoma, 16 A. L. R., 405, where the subject is discussed and authorities collated. Judge Davidson discussing this said: "The State·having introduced the evidence of the deceased witness, it was not necessary for appellant to lay the usual predicate for the introduction of impeaching testimony. It was impossible to do so. * * * The life and liberty of the citizen is worth more than the supposed fairness or unfairness of the treatment of a witness. To our minds the doctrine is too harsh for toleration, that the life of the accused may be taken on such evidence, and yet he be denied the right to impeach the veracity of the witness who gives such testimony." Hamblin v. State, 34 Texas Crim. Rep., 384, 385, 30 S. W., 1075.

Contrary authority exists based upon the reasoning that no predicate was ever laid and in justice to the witness this should be done. The rule in Texas, as well as the great weight of authority elsewhere, however, is as stated by Judge Davidson above. Those authorities favoring the rule which permits the introduction of impeaching testimony without the usual proof of predicate proceed upon the reasoning that since no opportunity was ever afforded for laying a predicate, the law will not require the impossible. See notes to Liddell v. State, 16 A. L. R., 405. In the absence of facts which support this reasoning, the rule in our opinion ceases to exist. This would seem logically to follow as the converse of the reasoning given in support of the rule, which admits impeachment without proof of a predicate. Therefore we think where a witness' testimony has been reproduced and the party injuriously affected thereby desires to impeach such witness by showing that he had made contradictory statements, of which the party had knowledge when the witness testified, and then neglected to lay the proper predicate for impeachment, he will be precluded from using the impeaching evidence. However, if the contradictory statements were made by the dead or absent witness subsequent to the time he gave his evidence, which is reproduced, or, although the contradictory statements may have been made prior to the giving of such evidence, if knowledge of such contradictory statements did not come to the party until after the witness tes-

tified, such impeaching evidence may be received without a predicate having been laid. This exact question was not discussed by the court in the case of Mitchell v. State, 87 Texas Crim. Rep., 530, 222 S. W., 984, and the broad rule there stated is to be interpreted in the light of what is here said.

We are further of the opinion that proof that witness LaBleu bore a bad reputation for truth and veracity would be admissible. We see no reason for a different rule in this matter from that which would obtain if the witness were living. Carter v. State, 191 Ala., 3, 67 So., 981; Lester v. State, 37 Fla., 382, 20 So., 232; 1 Criminal Procedure (2nd Ed.), par. 1209, by Mr. Bishop. It follows that we think the court erred in rejecting the testimony of witness Bowers. The above discussion is deemed a sufficient guidance for the trial court in governing the admissibility of other testimony which may be offered on another trial.

Other questions presented are deemed to be without merit, but for the error above discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MARTIN, JUDGE.—The State has filed a motion for rehearing, not questioning any rule of law announced in our original opinion herein, but vigorously contending that bill of exception No. 4, upon which we based our reversal, was insufficient to present the question discussed and decided. The bill as heretofore intimated has been obscured by vague and irrelevant statements and the ponderous recital of verbatim extracts from the statement of facts which appear entirely immaterial.

The State contends that the bill is sufficient to show that the jury retired and in its absence appellant had read to the court in the jury's absence a part of the former testimony of the deceased witness LaBleu as a predicate for his impeachment; that this was followed by placing the witness Bowers on the stand and having him testify to certain statements in contradiction of the statement of LaBleu, all of which happened before the court in the jury's absence; that the State objected to the testimony of Bowers because the same was hearsay and "no testimony was before the jury to form a basis to impeach LaBleu"; that the court sustained these objections, to which the defendant excepted. A careful reconsideration of the bill convinces us that its proper construction is as contended by the State, that is that the appellant was put upon notice that the State's objection was that he had not proved before the jury a proper predicate. The bill further certifies that no such predicate was

offered before the jury. Obviously the witness could not be impeached without laying the proper predicate before the jury and this not having been done, or attempted, no error is shown therein. Perea v. State, 88 Texas Crim. Rep., 382, 227 S. W., 305.

. The refusal of a subsequent application for a continuance is made the subject of bill of exception No. 1. The absent testimony related to proof of statements allegedly in contradiction to the testimony of State's witness LaBleu, who is mentioned above. A motion to continue for impeaching testimony will ordinarily be refused. Branch's P. C., Sec. 324; Rodgers v. State, 36 Texas Crim. Rep., 563, 38 S. W., 184; McCuen v. State, 75 Texas Crim. Rep., 108, 170 S. W., 738. In addition, this bill is fatally defective in failing to show either the materiality of this testimony or such facts as would make it admissible under the rules already laid down for the impeachment of a deceased witness. If appellant with full knowledge of this testimony failed to lay a predicate for its introduction when LaBleu was on the witness stand at a former trial, he could not thereafter use his alleged impeaching testimony. Authorities cited in original opinion. The existence of such facts as would render this testimony admissible should have been alleged in appellant's motion for continuance.

Finding no error in the record properly presented for review, the State's motion for rehearing is granted and the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—We do not care to again review bill of exception No. 4. It had our most careful attention upon consideration of the State's motion for rehearing. In appellant's motion for rehearing he asks that we again give consideration to bills of exception Nos. 2 and 3. In appellant's reply to the State's motion for rehearing, which reply was filed on March 29, 1930, there is an admission that bill of exception No. 2 shows an attempt to impeach LaBleu without any predicate being laid. This, we take it, eliminates said bill.

Bill of exception No. 3 first contains the indictment against appellant. We fail to see the necessity for this. The next two pages contain the State's reproduced testimony of LaBleu, who had died since testifying on the former trial. After his evidence was read, appellant's attorney said: "In connection with the testimony of Mr. J. B. LaBleu just read I want to state that I have some impeaching witnesses who are not

here. When it comes our turn we want to offer some testimony to impeach him." To which the court remarked: "We will pass on that when we get to it." There is then set out in the bill sixteen pages of testimony, some of which was offered by the State and some by appellant. We have been unable to see the necessity of thus cumbering the bill. Finally the bill does recite that appellant placed on the stand the witness Mouser; that the jury was withdrawn at the request of the State, and, in the absence of the jury Mouser testified about a conversation claimed to have occurred between him and LaBleu, and between LaBleu and another party, and also testified that LaBleu's general reputation for truth and veracity was bad. The conversations that Mouser testified about occurred subsequently to the other trials of the case. The testimony just mentioned given by Mouser was objected to by the State on the ground that they could not see how it could impeach the dead man, which was LaBleu. If the court ever made any ruling upon the objection interposed by the State the bill fails to show it. It does recite that appellant excepted to the ruling of the court, and the bill concludes with a certificate of the judge that all the testimony of Mouser was given in the absence of the jury. It is nowhere stated in the bill that evidence was ever offered in the presence of the jury, either to the effect that LaBleu's general reputation for truth and veracity was bad, or that Mouser's testimony which would have tended to impeach LaBleu upon the question of the identity of appellant was ever offered in the presence of the jury. The bill fails to show that the court ever ruled upon the State's objection at all, or intimated in any way that he would not permit the evidence to go before the jury. In this state of the record no error is disclosed by this bill of exception.

Appellant's motion for rehearing is overruled.

*Overruled.*